LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
GREGORY P. ADAMS (CSB No. 292391)
gadams@fenwick.com
SOFIA RITALA (CSB No. 342253)
sritala@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendant
ARCHER AVIATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONES LANG LASALLE AMERICAS, INC., a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ARCHER AVIATION, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 5:23-cv-00791-CRB<br><br>**ARCHER'S ANSWER AND COUNTERCLAIM TO JLL'S COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Defendant Archer Aviation, Inc. ("Archer"), by and through its undersigned counsel, answers the Complaint of Plaintiff Jones Lang LaSalle Americas, Inc. ("JLL") as follows:

### NATURE OF THE ACTION[1]

1. Archer admits that JLL purports to seek damages and equitable relief from Defendant Archer. Archer denies that JLL is entitled to any relief. Archer admits that Archer and JLL entered into a Memorandum of Understanding ("MOU") on May 15, 2021, based on JLL's standard form agreement, and that JLL has attached a copy of the MOU as Exhibit 1 to the Complaint. Archer denies the remaining allegations of Paragraph 1.

### THE PARTIES

2. Archer lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 2 and, on that basis, denies them.

3. Archer admits that Archer Aviation Inc. is a Delaware corporation with its principal place of business at 190 W. Tasman Drive, San Jose, California 95134. The remainder of Paragraph 3 alleges legal conclusions to which no response is required.

### JURISDICTION AND VENUE

4. Archer admits for purposes of this case only that this Court has personal jurisdiction over Archer based on Archer's headquarters in this District. Archer denies the remaining allegations of Paragraph 5.

5. Archer admits that JLL alleges damages in excess of $75,000, and thus the amount in controversy exceeds that amount.

6. Paragraph 6 alleges legal conclusions to which no response is required.

7. Paragraph 7 alleges legal conclusions to which no response is required. If a response is required, Archer admits that it does business in the District and maintains its principal place of business within the District.

8. Archer admits that the Parties' MOU of May 15, 2021, includes a Section 9 entitled "███████████████," which states in part: "████████████████

---

[1] To the extent that JLL intends the headings in its Complaint to constitute allegations, Archer denies them. The headings in Archer's Answer are not responses to them.

1. █████████████████████████████████████████████
2. █████████████████████████████████████████████
3. ████████████████████████████████████████████."

4. Archer denies that venue is proper in San Francisco, California, and expressly reserves the right to seek intradistrict transfer or special setting for pretrial or trial in Santa Clara County. The remaining allegations of Paragraph 8 allege legal conclusions to which no response is required.

## GENERAL ALLEGATIONS

9. Archer admits that Archer and JLL entered into an MOU on May 15, 2021, and that JLL has attached a copy of the MOU to the Complaint as Exhibit 1.

10. Archer admits that the MOU states in Section 1: "████████████████████████████████████████████████████████████████████████████████████████████████████████." Archer denies the remaining allegations of Paragraph 10.

11. Archer admits that Exhibit A to the MOU is entitled "████████████" and lists various sections, including the following: "████████████████"; "████████████"; "████████████████████████████████████████." Archer denies the remaining allegations of Paragraph 11.

12. Archer denies that Paragraph 12 fully or accurately states the conditions under which payment of any BEI fee is due. Archer admits that Exhibit A to the MOU states in part:

████████████████████
████████████████████████████████████
| ████████████████████████████████
| ████████████████████████████████████████████████████████████████████████████████████

ARCHER'S ANSWER AND COUNTERCLAIM TO JLL'S COMPLAINT — 2 — Case No.: 5:23-cv-00791-CRB

[REDACTED]

- [REDACTED]

Archer denies the remaining allegations of Paragraph 12, and specifically denies that (a) any fee is, or becomes, due prior to the actual execution and closing of a potential transaction that might be subject to potential benefits, or (b) if the MOU has terminated prior to the actual execution and closing of such a transaction, or (c) if the tail provisions for identifying potential post-termination fees have not been complied with.

13. Archer admits that JLL provided some incomplete services concerning identification, selection, and negotiations over the Covington facility, and alleges that JLL's failure to perform as it had contracted caused Archer to incur significant expense evaluating at least four other sites, securing alternative financing, and ultimately closing a new deal for Covington without outside funding secured, but with options for potential developer-provided financing and long term financing from Synovus Bank that to this day Archer continues to work to secure wholly independently from JLL. Archer admits that the MOU provides [REDACTED], as follows:

[REDACTED]

Archer lacks knowledge or information sufficient to form a belief concerning JLL's allegation that it incurred $25,829.76 in out-of-pocket expenses in relation to the Project, and thus denies it, but Archer denies that it has ever refused to [REDACTED] expenses as provided by the MOU. Archer denies the remaining allegations of Paragraph 13.

14. Archer admits that JLL cites to Exhibit 2 to the Complaint purporting to be a letter dated September 21, 2021, addressed from Padgett Wilson, Commissioner of the Georgia Department of Economic Development, to Meredith O'Connor, Executive Managing Director at JLL. Archer denies that JLL's services resulted in any offer capable of acceptance, due to JLL's failure to secure financing and perform other services as it had contracted to do in the MOU. Archer denies the remaining allegations of Paragraph 14.

15. Archer admits that JLL cites to Exhibit 3 to the Complaint purporting to be a letter dated September 16, 2021, addressed from Scott Andrews, City of Covington City Manager, to "Project Jane Developers." Archer denies that JLL's services resulted in any offer from the City of Covington capable of acceptance by Archer, due to JLL's failure to secure financing and perform other services as it had contracted to do in the MOU. Archer denies the remaining allegations of Paragraph 15.

16. Archer denies that JLL's services resulted in any offer capable of acceptance, due to JLL's failure to secure financing and perform other services as it had contracted to do in the MOU. Archer denies the remaining allegations of Paragraph 16.

17. Archer denies that it approved "the Project," as JLL has defined it in its complaint. Archer admits that on November 14, 2022, Archer publicly announced plans to locate a manufacturing facility in Covington, Georgia, based on its own ongoing efforts to close a deal for that location. Archer denies the remaining allegations of Paragraph 17.

18. Archer admits that JLL cites to Exhibit 4 to the Complaint, bearing Invoice number LM00000558219001, which on its face lists an Invoice Date of 12/13/2022 and a Bill-To-Address of Archer Aviation, Inc., 1880 Embarcadero Road, Palo Alto, CA 94303, and that Exhibit 4 reflects the recited calculations. Archer denies the remaining allegations of Paragraph 18.

19. Archer admits that JLL cites to Exhibit 4 to the Complaint, which on its face lists JLL's alleged expenses and a portion of the disputed BEI fee. Archer denies the remaining allegations of Paragraph 19.

20. Archer admits that on January 3, 2023, Archer informed JLL by letter that JLL is not entitled to the commission cited in JLL's invoice of December 13, 2022. Archer admits that it

has not remitted the payment invoiced in Exhibit 4 to the Complaint and, subject to its other responses above with respect to expenses, denies that any such payment is due. Archer denies the remaining allegations of Paragraph 20.

21. Denied.

### COUNT I – BREACH OF CONTRACT

22. Archer incorporates its responses to Paragraphs 1 through 21 above.

23. Archer admits that Archer and JLL entered into an MOU on May 15, 2021, and that JLL has attached a copy of the MOU to the Complaint as Exhibit 1. Archer denies the remaining allegations of Paragraph 23.

24. Denied.

25. Denied.

26. Denied.

27. Archer admits that JLL invoiced Archer on or about December 13, 2022, and that JLL has attached a copy of the invoice as Exhibit 4 to the Complaint. Archer denies the remaining allegations of Paragraph 27.

28. Denied.

29. Denied.

The unnumbered paragraph following Paragraph 29 recites legal conclusions to which no response is required. If a response is required, Archer denies the allegations and denies that JLL is entitled to any requested relief.

### COUNT II – ANTICIPATORY BREACH OF CONTRACT: REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF

30. Archer incorporates its responses to Paragraphs 1 through 29 above.

31. Archer admits that Archer and JLL entered into an MOU on May 15, 2021, and that JLL has attached a copy of the MOU to the Complaint as Exhibit 1. Archer denies the remaining allegations of Paragraph 31.

32. Denied.

33. Denied.

34. Denied.

35. Archer admits that JLL invoiced Archer on or about December 13, 2022, and that JLL has attached a copy of the invoice as Exhibit 4 to the Complaint. Archer denies the remaining allegations of Paragraph 35.

36. Denied.

37. Archer admits that on January 3, 2023, Archer informed JLL by letter that JLL is not entitled to the commission cited in JLL's invoice of December 13, 2022. Archer admits that it has not remitted the payment invoiced in Exhibit 4 to the Complaint and, subject to its other responses above with respect to expenses, denies that any such payment is due. Archer denies the remaining allegations of Paragraph 37.

38. Denied.

39. Denied.

The unnumbered paragraph following Paragraph 39 recites legal conclusions to which no response is required. If a response is required, Archer denies the allegations and denies that JLL is entitled to any requested relief.

## COUNT III – UNJUST ENRICHMENT

40. Archer incorporates its responses to paragraphs 1 through 39 above.

41. Archer lacks knowledge or information sufficient to admit or deny the allegations of Paragraph 41 and, on that basis, denies them.

42. Paragraph 42 recites legal conclusions to which no response is required. If a response is required, Archer denies the allegations of Paragraph 42.

43. Paragraph 43 recites legal conclusions to which no response is required. If a response is required, Archer denies the allegations of Paragraph 43.

44. Denied.

45. Denied.

The unnumbered paragraph following Paragraph 45 recites legal conclusions to which no response is required. If a response is required, Archer denies the allegations and denies that JLL is entitled to any requested relief.

**REQUEST FOR RELIEF**

Archer denies that JLL is entitled to any of the relief requested in the Complaint or any relief. Archer denies all allegations not specifically admitted above.

**ADDITIONAL DEFENSES**

Archer also asserts the following defenses to the Complaint. In doing so, Archer does not assume any burden of proof on any issue that is JLL's burden. Archer reserves the right to amend or supplement these defenses as additional facts become known.

**FIRST DEFENSE: IMPROPER VENUE**

Venue is improper in the San Francisco Division of this District under the Parties' Memorandum of Understanding dated May 15, 2021, in which the Parties specified that any disputes would be venued in Santa Clara County, California.

**SECOND DEFENSE: FAILURE TO STATE A CLAIM**

The Complaint fails to state a claim upon which relief can be granted.

**THIRD DEFENSE: FAILURE TO PERFORM**

JLL failed to perform its obligations under the Parties' MOU.

**FOURTH DEFENSE: WAIVER**

JLL has waived, relinquished, or abandoned any claim for relief by its conduct, representation, or omission, including but not limited to its failure to extend the term of the MOU, to contest the expiration of the MOU when its term expired, or to provide written notice to Archer as required under the Parties' MOU if it intended to make a claim for fees based on a transaction entered after expiration or termination of the MOU.

**FIFTH DEFENSE: ESTOPPEL**

JLL is equitably estopped from asserting any claim for relief against Archer based on at least the facts alleged above with respect to waiver, as well as the fact that JLL expressly confirmed the termination of the MOU in August 2022 without giving notice of any claim.

**SIXTH DEFENSE: FAILURE OF CONDITION PRECEDENT**

As to any obligation or duty that JLL alleges Archer has not fully performed, not all conditions precedent to said obligations or duties occurred.

### SEVENTH DEFENSE: GOOD FAITH

Archer has engaged in all relevant activities in good faith, thereby precluding JLL, even if it prevails, from recovering its reasonable attorneys' fees or costs under 35 U.S.C. § 285.

### RESERVATION OF DEFENSES

Archer reserves the right to assert additional defenses if discovery or other analysis shows that additional defenses are appropriate.

### COUNTERCLAIM

Counter-Claimant Archer alleges the following counterclaim for declaratory judgment against Counter-Defendant JLL based on its knowledge and, as to JLL's internal operation and functions, on information and belief.

### PARTIES

1. Archer is a Delaware corporation with its headquarters at 190 W. Tasman Drive, San Jose, California 95134.

2. In its Complaint, JLL purports to be a Maryland corporation with its corporate headquarters and principal place of business at 200 East Randolph Drive, Chicago, Illinois 60601.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1332, 1367, 2201(a), and 2202.

4. JLL has subjected itself to personal jurisdiction by filing its complaint in this District and because, among other things, JJL is transacting and doing business here. All claims and counterclaims arise out of or related to the parties' Memorandum of Understanding of May 15, 2021, in which the parties consented to jurisdiction and venue in Santa Clara County, California, where JLL originally filed this action.

5. Venue is proper in this District (in Santa Clara County) because JLL brought this action and thereby consented to venue there. Alternatively, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to JLL's claims occurred in this District and because in their MOU the parties consented to venue in Santa Clara County, which is within this District.

6. An actual controversy exists between Archer and JLL as to the Parties' contractual obligations under the expired MOU, including, but not limited to, those identified in the Complaint, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

## FACTUAL BACKGROUND

**A.     The Parties' Memorandum of Understanding**

7. Archer is a leading developer of electric vertical take off and landing (eVTOL) aircraft working to usher in a revolutionary future of urban air mobility. Archer's flagship production eVTOL aircraft, Midnight, announced last year, is designed to be capable of flying distances of up to 100 miles, but optimized to conduct back-to-back flights of ~20 miles with ~12 minutes of charge time in between, and at a cost that is targeted to be competitive with ground-based ride share alternatives. Archer seeks to redefine what air travel can be: low cost, low noise, with the safety of commercial airlines.

8. Archer is growing rapidly and has secured orders and announced planned routes with United Airlines. For example, Archer has announced plans to supply United with up to 150 of its Midnight aircraft with certain of these to be deployed to connect passengers from New York City to Newark Airport in just 10 minutes. Archer has also teamed up with Stellantis, one of the largest automobile companies in the world, with brands like Jeep, Ram and Maserati, to accelerate its ramp up of high-volume manufacturing capabilities.

9. Recognizing the need for such high-volume manufacturing capabilities, two years ago Archer approached JLL to help identify and secure a location in the U.S. for Archer to build out its planned facility.

10. JLL purports to provide comprehensive commercial real estate services, including site search, evaluation, selection, negotiation, and acquisition. In addition, JLL purports to offer comprehensive program management, capital planning and tax incentive services, and design and construction management, among others. Archer looked to JLL for a coast-to-coast search for a site meeting its operational needs and other factors like adjacency to an airport (to allow for test flights), access to a talented workforce, and cost-effectiveness.

ARCHER'S ANSWER AND COUNTERCLAIM TO JLL'S COMPLAINT                         9                         Case No.: 5:23-cv-00791-CRB

11. On May 15, 2021, Archer and JLL entered a Memorandum of Understanding ("MOU").

12. The MOU documented that JLL would perform certain commercial real estate services on behalf of Archer. (MOU § 1.)

13. The objective of the services was to secure such a location for Archer's new manufacturing facility as well as the incentives and financing that would allow Archer to build it out. (*Id.*)

14. JLL prepared the first draft of the MOU.

15. JLL presented the first draft of the MOU to Archer.

16. JLL used its standard form to prepare the first draft of the MOU.

17. The parties then executed the MOU that was based on the terms in JLL's form contract.

18. The MOU did not modify JLL's form contract term that the parties' engagement would terminate at the end of a designated Term unless the parties agreed to an extension. (*Id.* § 1.)

19. The MOU did not modify JLL's form contract term entitled "███████████" (*Id.* § 2.)

20. The MOU did not modify JLL's form contract term listing JLL's warranties and representations. (*Id.* § 3(i)–(v).)

21. The MOU did not modify JLL's form contract term stating "███████████████████████████████████████████████████████████████████████████████" (*Id.* § 6.)

22. The MOU did not modify JLL's form contract term entitled "███████████" (*Id.* § 8.)

23. The MOU listed the Scope of Services that JLL had to perform in an Exhibit A.

24. First, in Phase 1, JLL was responsible for ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (*Id.* § 1; *id.*, Ex. A, §§ 1.1–1.3.)

25. Phase 2 of the MOU was the ███████ phase, in which JLL was responsible for ████████████████████████ (*Id.*, §§ 2.1–2.7.) Among other obligations, JLL had to:

███████████████████████████████████████████████████████ meeting Archer's "█████

████████████████████████," (*id.* at 2 (Phase 2)); secure for Archer ██████████

████████████████████, (*id.*, § 2.4); and ███████████████████████████████, (*id.*,

§ 2.7).

26. Finally, Section 3 of Exhibit A described related "██████████████████

██████" that JLL would perform alongside its acquisition of Archer's facility. (*Id.*, § 3.) Here,

JLL would ██████████████████████████████████████████████████████████████████

████████████████████████████████. The list of ███████████████ that JLL was required to

provide included ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████. (*Id.*, §§ 3.1–3.2.)

27. Exhibit A to the MOU contained clear payment terms for these services.   JLL's

compensation was structured ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████. (*Id.* at 3 (Phase 2 – Compensation).)[2]

28. At the same time, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████.

29. The Benefits were clearly defined as ████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████.

30. The MOU required both Archer and JLL to ███████████████████████████

████████████████████████████████████████.

31. The BEI Fee was contingent upon a realized transaction and Archer's "█████

████████████████████████████████████████████████████████████████ but if due was to

---

[2] JLL waived ████████████████████████████████████ in Phase 1. (MOU, Ex. A, at 2 (Phase 1 – Compensation).)

be paid "██████████████████████████████████████." (*Id.* at 5–6 (Section 3 – Compensation).)

32. In consequence, whereas JLL bore the risk that it would receive no compensation absent a realized transaction within the term, that risk shifted to Archer upon such a transaction within the term, as JLL would then be entitled to both a ██████████████████████ and a percentage of Archer's BEI benefits irrespective of whether Archer realized 100% the Benefits.

33. Those payment terms, however, were all contingent upon other provisions in the MOU, including a provision specifying its term and expiration: "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." (MOU § 1.)

34. Finally, in the event such a transaction did not come to fruition before the termination on June 1, 2022, the MOU also contained an express tail provision. It stated that if the MOU expired by its terms, JLL would have a right to compensation only if both of the following were satisfied: (1) ████████████████████████████████████████████████████████████████████████████ and (2) ████████████████████████████████████████████████████████. (MOU § 8.) Only then would "████████████████████████████████████████████████████████████" (*Id.*; *see id.* § 6 ("████████████████████████████████████").)

**B. A Transaction Did Not Occur During the MOU's Term**

35. The parties began work on Phase 1 in Spring 2021, starting with a list of more than 250 potential locations for Archer's facility. They narrowed the list to nine sites, and eventually to two. By October 2021, Archer had settled on a potential finalist: a site in Covington, Georgia.

36. JLL was obligated under the MOU to provide Archer with alternative financing structures and "██████" options for financing a transaction, including evaluations "██████████████████████████████." (*See* MOU, Ex. A, § 2.4.)

37. JLL failed to identify a single viable financing option.

38. JLL introduced Archer to the real estate development and investment firm CRG for potential developer-provided debt financing for the transaction. Throughout late 2021 and into early 2022, Archer and CRG engaged in regular discussions about the project to reach a debt financing deal. But for months CRG failed to offer viable financing, and Archer was forced to begin to look at alternatives itself.

39. Throughout that period, JLL continued to promote CRG as the sole funding source for a transaction, though JLL was little more than a go-between while Archer tried to salvage the transaction and negotiate a deal with CRG.

40. Eventually, by around March 2022, it was clear to Archer that the JLL/CRG funding option had fallen through. With no help from JLL, Archer began to search for its own funding solutions instead.

41. With funding in doubt, Archer recognized that the Covington site itself was also in jeopardy. Thus, while pursuing its own alternative funding for Covington, Archer also began to pursue new sites for a facility. Archer began an independent search separate from the options that it had worked up with JLL. After conducting extensive research and exploring potential manufacturing partnerships, Archer narrowed down its own list to four sites. Archer then conducted detailed site visits at each one of those sites and identified a leading option at a facility in Indiana owned by its strategic partner, Stellantis. JLL played no role in Archer's searches for funding for a new site.

42. Meanwhile, the MOU expired by its terms on June 1, 2022. (MOU § 1.)

43. JLL did not contact Archer to request that the parties extend the MOU terms.

44. The parties did not agree to extend the MOU. (*See id.*)

45. Although not required to effect the already-complete expiration of the MOU, Archer reconfirmed that termination on August 24, 2022, when it informed JLL that it was "terminating the relationship with CRG and sunsetting any ongoing efforts to support our project." (Exhibit A, August 24, 2022, email from Glen Burks to Trevor Ragsdale.) JLL confirmed back to Archer the same day that it would "proceed accordingly." (*Id.*)

46. Months later, Archer entered into a letter of intent with Synovus Bank to cover funding options for the manufacturing site in Covington, Georgia, where it is now working directly with a new developer to build out the facility.

47. On November 14, 2022, Archer announced its selection of the Covington site.[3]

48. As part of its selection of the site in Covington, Georgia, Archer is eligible for certain economic incentives. For example, Archer may be eligible for a Regional Economic Business Assistance (REBA) grant of up to $3 million, payable over time but contingent upon Archer meeting certain tiered job creation metrics. Archer may also be eligible for unrealized tax credits and incentives, but all such tax benefits are estimates only.

49. JLL did not perform all required services under the MOU. At a minimum, JLL failed in its obligations to:

   a. "█████████████████████████████████" meeting Archer's "█████████████████████." (MOU, Ex. A, at 2 (Phase 2).)

   b. Secure for Archer █████████████████████████. (*Id.*, § 2.4.)

   c. Negotiate █████████████████████████ (*Id.*, § 2.7.)

   d. Deliver a █████████████████████████████████████ described in Section 2.7, including the █████████████████████████████████████ █████████████████████████████████████ ███████████████ (*Id.*, §§ 3.1–3.2.)

50. On December 13, 2022, more than six months after the termination of the MOU, JLL sent to Archer an invoice demanding payment of more than $3.5 million payable over nearly two years.

---

[3] https://www.archer.com/news/archer-aviation-selects-site-in-georgia-adjacent-to-the-covington-municipal-airport-for-its-manufacturing-facility

**C.     No Compensation is Due to JLL Under the MOU**

51.     JLL did not furnish to Archer ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ required under Section 8 of the MOU.  Indeed, JLL has never done so.

52.     Nor did Archer, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."  (MOU § 8.)

53.     As a result, JLL has no right to any compensation "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" of the MOU.  (*Id.*)  There is no other compensation under the MOU, and therefore JLL is entitled to no compensation.

54.     Additionally, JLL does not allege and has never claimed that it is entitled to a ▮▮▮▮▮▮▮▮▮▮▮▮▮ as a procuring real estate broker under Phase 2 of the MOU. (*See* MOU, Ex. A, at 3 (Phase 2 – Compensation).)

55.     JLL is entitled to no such ▮▮▮▮▮▮▮▮▮▮▮▮, or any other compensation related to a real estate transaction, because Archer, independently from JLL, secured and is developing its manufacturing site, with funding sources that Archer has had to continue to source and negotiate on its own to this day.  JLL thus failed to close a transaction for Archer's ▮▮▮▮▮▮▮▮ as contemplated by the MOU.  (*Id.*; *id.* §§ 1.1–2.7; MOU §§ 1, 6, 8.)

56.     JLL is entitled to no "▮▮▮▮▮" under the MOU either.  The MOU terminated by its terms on June 1, 2022, and there was no "▮▮▮▮▮" of a transaction before that date as required to warrant any ▮▮▮▮▮ payable to JLL. (MOU, Ex. A at 6 (Section 3 – Compensation).)  Moreover, Archer and the "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" did not give "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" until Archer secured its alternative approach to the Covington site in November 2022, more than five months after expiration (*See id.*)  JLL also failed to provide the ▮▮▮▮▮▮▮▮▮ as required by Section 8, which provided that JLL could receive "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" only if it provided ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Archer ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (MOU § 8.) Neither requirement was satisfied, so JLL is entitled to no compensation under the MOU.

# FIRST COUNTERCLAIM

## (Declaratory Judgment of No Contractual Obligation)

57. Archer incorporates and realleges the preceding paragraphs of this counterclaim.

58. There is an actual, substantial, continuing, and justiciable controversy between Archer and JLL about their rights and duties under the MOU.

59. The MOU expired by its terms on June 1, 2022. Yet JLL continues to assert that Archer owes a contractual duty.

60. JLL also asserts that Archer owes an ongoing payment obligation to JLL under the MOU, at least through December 2024.

61. Archer disputes that it has any retrospective or prospective contractual obligations.

62. Archer therefore has standing to seek declaratory judgment of its rights under its MOU with JLL.

63. Archer seeks and is entitled to a declaratory judgment that the MOU expired and is no longer in force or effect, and Archer does not have an obligation to make payment to JLL as it has claimed.

64. Archer is entitled to its attorneys' fees and related fees, costs, and expenses under Section 5 of the MOU: "██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."

## PRAYER FOR RELIEF

Archer prays that the Court:

A. Dismiss JLL's Complaint in its entirety;

B. Enter judgment for Archer and against JLL on each of JLL's claims;

C. Enter judgment for Archer and against JLL on Archer's counterclaim;

D. Declare that the parties' MOU terminated by its own terms on June 1, 2022;

E. Declare that Archer bears no further obligation to JLL, whether in law or equity;

F. Award Archer its reasonable attorneys' fees, costs, and expenses; and

G.   Award Archer such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Archer demands a trial by jury on all issues so triable.

Dated:  March 28, 2023                    FENWICK & WEST LLP

By: */s/ Laurence F. Pulgram*
    Laurence F. Pulgram

    Attorneys for Defendant
    ARCHER AVIATION, INC.