LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
TODD R. GREGORIAN (CSB No. 236096)
tgregorian@fenwick.com
GREGORY P. ADAMS (CSB No. 292391)
gadams@fenwick.com
SOFIA RITALA (CSB No. 342253)
sritala@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:      415.281.1350

Attorneys for Defendant
ARCHER AVIATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONES LANG LASALLE AMERICAS, INC., a Maryland Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ARCHER AVIATION, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 3:23-cv-00791-CRB<br><br>**ARCHER'S OPPOSITION TO JLL'S MOTION TO DISMISS AND STRIKE**<br><br>Date:  July 14, 2023<br>Time:  10:00 a.m.<br>Courtroom:  6<br>Judge:  Honorable Charles R. Breyer |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ................................................................................................ 2

    A. The parties entered a Memorandum of Understanding ("MOU") for JLL to locate and secure a manufacturing facility for Archer. .............................. 2

    B. JLL never closed a transaction for Archer and the MOU terminated on June 1, 2022. ............................................................................................................ 4

III. PROCEDURAL HISTORY .............................................................................................. 6

    A. JLL filed its complaint demanding a Business and Economic Incentives Fee that the MOU conditioned on JLL closing a real estate transaction. ............................................................................................................. 6

    B. Archer filed a declaratory judgment counterclaim to resolve the parties' rights under all payment terms in the MOU, including for the real estate services that JLL failed to perform and omitted from its complaint. ............................................................................................................... 7

    C. JLL moved to dismiss Archer's declaratory judgment counterclaim as allegedly a "mirror image" of JLL's narrower complaint, and to strike portions of Archer's defenses. ....................................................................... 8

IV. SUMMARY OF ARGUMENT ........................................................................................ 9

V. LEGAL STANDARD ....................................................................................................... 9

VI. ARGUMENT ................................................................................................................... 10

    A. The Court should deny the motion to dismiss because Archer's counterclaim seeks a declaratory judgment concerning contract terms and facts that JLL ignored in its complaint. .......................................................... 10

    B. The Court should deny the motion to strike Archer's affirmative defenses as they are legally sufficient and JLL has shown no prejudice from them. ........................................................................................................... 13

VII. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ACE Am. Ins. Co. v. Old Republic Gen. Ins. Corp.*,
  20-cv-482 (WHO), 2020 WL 4001459 (N.D. Cal. July 15, 2020) .................................... 9, 11

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013) .................................................................................................................. 14

*Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*,
  718 F. Supp. 2d 1167 (N.D. Cal. 2010) ................................................................................ 13

*Brawley v. Alltel Corp.*,
  08-cv-68, 2008 WL 2065976 (D. Ariz. May 13, 2008) ........................................................ 10

*Castaline v. Aaron Mueller Arts*,
  09-cv-2543 (CRB), 2010 WL 583944 (N.D. Cal. Feb. 16, 2010) ......................................... 10

*EEOC v. Timeless Investments, Inc.*,
  734 F. Supp. 2d 1035 (E.D. Cal. 2010) ................................................................................ 15

*Equine Legal Sols., Inc. v. Buntrock*,
  07-cv-4976 (CRB), 2008 WL 111237 (N.D. Cal. Jan. 9, 2008) ............................................ 10

*Harris v. Chipotle Mexican Grill, Inc.*,
  303 F.R.D. 625 (E.D. Cal. 2014) .......................................................................................... 13

*Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*,
  423 F. Supp. 3d 139 (W.D. Pa. 2019) ............................................................................... 9, 11

*Joe Hand Promotions, Inc. v. Davis*,
  11-cv-6166, 2012 WL 4803923 (N.D. Cal. Oct. 9, 2012) .................................................... 15

*Kohler v. Staples the Office Superstore, LLC*,
  291 F.R.D. 464 (S.D. Cal. 2013) .......................................................................................... 15

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) .................................................................................................................. 14

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ................................................................................................ 2

*Miller v. Ghirardelli Chocolate Co.*,
  12-cv-4936, 2013 WL 3153388 (N.D. Cal. June 19, 2013) ....................................... 9, 13, 15

*Polaris PowerLED Techs., LLC v. Nintendo Co.*,
  623 F. Supp. 3d 1132 (W.D. Wash. 2022) ........................................................................... 13

*Rituel De Fille, Inc. v. And So It Is!, LLC*,
  20-cv-11024, 2021 WL 4974796 (C.D. Cal. Mar. 23, 2021) .......................................... 10, 13

## TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Schuman v. Microchip Tech., Inc.*,
   372 F. Supp. 3d 1054 (N.D. Cal. 2019) .................................................................................. 2

*Stickrath v. Globalstar, Inc.*,
   07-cv-1941, 2008 WL 2050990 (N.D. Cal. May 13, 2008) ......................................... 9, 10, 12

*United States v. Global Mortgage Funding, Inc.*,
   07-cv-1275, 2008 WL 5264986 (C.D. Cal. May 15, 2008) ................................................. 15

*Westwood v. Brott*,
   22-cv-3374 (CRB), 2022 WL 17418975 (N.D. Cal. Dec. 5, 2022) ...................................... 10

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
   901 F.3d 1081 (9th Cir. 2018) ........................................................................................ 9, 14

**STATUTES AND RULES**

Fed. R. Civ. P. 12 ................................................................................................................ 10, 13

Fed. R. Civ. P. 26 ........................................................................................................................ 13

**OTHER AUTHORITIES**

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
   Fed. Prac. & Proc. Civ. § 1406 (3d ed. 1998) ...................................................................... 10

William Schwarzer, et al., Cal. Practice Guide:
   Fed. Civ. Pro. Before Trial § 9:376 (2013) ...................................................................... 9, 13

## I. INTRODUCTION

This case concerns an attempt by Plaintiff Jones Lang LaSalle Americas, Inc. ("JLL") to extract a windfall payment from Defendant Archer Aviation, Inc. JLL omitted from its complaint that the parties' contract conditioned payment on JLL successfully closing a real estate transaction and that JLL failed to perform numerous obligations. Archer thus properly filed a counterclaim for declaratory relief, seeking a declaration not just that Archer owes JLL no commission on tax benefits as recited in the complaint, but also that Archer owes JLL no other payment obligations under any contract term. The Court should deny JLL's motion to dismiss that counterclaim.

Nearly two years ago the parties entered an agreement for JLL to broker a deal for a new manufacturing facility. JLL was to locate an appropriate site, procure financing, obtain related government incentives, and manage Archer's compliance with ongoing requirements to receive such incentives. A deal for Archer's preferred location in Covington, Georgia fell through after JLL failed to develop a viable financing option, at which point JLL abandoned the project and let the parties' agreement expire. Archer spent the next five months developing its own financing options and conducting a new nationwide search for locations, none of which JLL assisted with. Yet shortly after Archer announced the deal for its new facility, JLL sent Archer an invoice seeking a payment of over $3.5 million and then sued.

JLL's complaint in this case is silent about important facts. This was an agreement for commercial real estate services where, as is industry standard, JLL was to receive commission payments for its successful completion of a deal. Not only did JLL abandon the project without any deal in place, but it also later confirmed the termination of the parties' agreement in writing. The agreement, prepared using JLL's own standard form, contains a litany of duties that JLL failed to perform. And it also contains an express "tail" term for resolving payment disputes like this one—it provides that at termination JLL must give ███████████████████████████ ███████████████████████████████████████████████████████████ Without meeting those conditions—terms that JLL itself came up with—no payment is due.

Therefore, with its answer, Archer filed a declaratory judgment counterclaim spelling out these material facts and seeking an unambiguous and comprehensive ruling on the parties' rights

as to all payment terms in the agreement, i.e., that Archer owes JLL no real estate commission, no other compensation related to a real estate transaction, and no obligation under any other term.

JLL now asks the Court to exercise its discretion to dismiss the counterclaim, premised on an argument that the counterclaim is nothing more than a "mirror image" of the complaint. It is not. It seeks broader relief, resolving not just the incentive benefit payment that JLL addressed in its complaint, but a declaration that Archer does not owe JLL under any theory. The counterclaim also sets forth new and different facts about JLL's failure to perform and the termination of the agreement—in detailed allegations that will serve the usual function of helping the Court and parties to frame appropriate discovery, should this case reach that stage. JLL must recognize these distinctions, as elsewhere in its motion it asks the Court to strike as "irrelevant" all the pertinent allegations concerning Archer's charges that JLL failed to close a real estate transaction, that JLL's failure caused Archer to conduct independent site and financing searches, and that JLL did not earn any commission payments under the specific terms of the agreement. Finally, JLL also moves to strike Archer's properly reserved contractual right to a Santa Clara County jury, and its standard reservation of the right to assert additional defenses should discovery warrant them.

In the name of supposedly streamlining the case and avoiding unnecessary work, JLL has brought a motion that does exactly the opposite. Instead of answering the counterclaim and proceeding to the merits, JLL asks the Court to devote its own time to analyzing whether to excise fact allegations unfavorable to JLL or standard reservations that have no immediate practical effect. Archer's counterclaim and defenses are proper, and the Court should therefore deny JLL's motion.

## II. STATEMENT OF FACTS

### A. The parties entered a Memorandum of Understanding ("MOU") for JLL to locate and secure a manufacturing facility for Archer.

Archer is a leading developer of electric vertical takeoff and landing (eVTOL) aircraft. (*See* Dkt. 24 (hereafter "Counterclaim"), ¶ 7.)[1] Archer is growing rapidly, having secured orders to supply United Airlines with eVTOL aircraft and agreeing to collaborate on a strategic high-volume manufacturing facility with Stellantis, one of the world's largest automobile companies. (*Id.* ¶ 8.)

---
[1] These facts are as alleged in Archer's counterclaim, which the Court must accept as true on a motion to dismiss. *Schuman v. Microchip Tech., Inc.*, 372 F. Supp. 3d 1054, 1056 (N.D. Cal. 2019) (citing *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)).

Needing to ramp up its manufacturing capabilities, two years ago Archer approached JLL seeking help to identify and secure a property for Archer's planned manufacturing facility.  (*Id.* ¶ 9.)

Using JLL's form contract as their template, Archer and JLL entered a Memorandum of Understanding ("MOU") on May 15, 2021, documenting that JLL would perform certain commercial real estate services on behalf of Archer.  (*See* Dkt. 1-2 (MOU), § 1; Counterclaim ¶¶ 11–22.)  The goal was for JLL to secure a location for the new facility and the financing and government incentives that would allow Archer to build it out.  (*Id.*; *see* Compl. ¶¶ 9–11.)

The parties described the Scope of Services that JLL would perform in Exhibit A to the MOU.  In ▮▮▮▮ JLL would identify a short-list of locations for the new facility meeting criteria based on Archer's operational needs.  (*Id.* § 1; *id.*, Ex. A, §§ 1.1–1.3.)  Then, in ▮▮▮▮ JLL would negotiate and close the transaction for Archer's new facility.  (*Id.*, Ex. A, §§ 2.1–2.7.)  Among other obligations, JLL had to: ▮▮▮▮ ▮▮▮▮ meeting Archer's ▮▮▮▮ (*id.* at 2 (Phase 2)); secure for Archer ▮▮▮▮ (*id.* § 2.4); and negotiate ▮▮▮▮ (*Id.* § 2.7.)  Finally, ▮▮▮▮ described related ▮▮▮▮ that JLL would perform alongside acquisition of Archer's facility and ▮▮▮▮ (*Id.* § 3.)  Here, JLL would secure ▮▮▮▮ ▮▮▮▮ JLL would also provide certain listed ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ (*Id.* §§ 3.1–3.2.)

The MOU included clear payment terms for these services.  For closing a real estate transaction, JLL would earn ▮▮▮▮ ▮▮▮▮ (*Id.* at 3 (Phase 2 – Compensation).)  JLL could also earn ▮▮▮▮ ▮▮▮▮ (*Id.* at 5–6 (Section 3 – Compensation).)  The MOU defined the Benefits as ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 5.)

The MOU made the BEI Fee contingent upon Archer's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at the location where JLL closed a new facility for Archer. (*Id.* at 6.) The MOU also expressly tied the BEI Fee to a transaction by stating that the first payment of the BEI Fee would be due ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*) Thus, the MOU documented that Archer would owe no BEI Fee to JLL unless JLL closed a transaction. But if so, Archer would pay JLL the BEI Fee ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 5–6 (Section 3 – Compensation).)

The parties agreed from the outset that the MOU would terminate after just over one year: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (MOU § 1.)

The MOU also included a tail provision governing all payments after June 1, 2022. Under it, JLL could receive credit for negotiations still-in-progress *if* they led to a transaction ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ That provision stated that if the MOU expired by its terms, JLL would have a right to compensation *only* if both of the following were satisfied: (1) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (2) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* § 8.) Only then would ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*; *see id.* § 6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**B.    JLL never closed a transaction for Archer and the MOU terminated on June 1, 2022.**

The parties began work on Phase 1 in Spring 2021, starting with more than 250 potential locations for Archer's facility. (Counterclaim ¶ 35.) They narrowed the list to nine sites, then two, and by October 2021, Archer had settled on a potential finalist site in Covington, Georgia. (*Id.*)

But JLL failed to close a transaction for Archer, forcing Archer to pursue its own alternative financing and conduct its own site search independently from JLL. The MOU obligated JLL to provide Archer with alternative financing structures and ▮▮▮▮ options for financing a transaction, including evaluations ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (MOU, Ex. A, § 2.4.) But JLL failed to identify a single viable financing option. (Counterclaim ¶¶ 36–37.) JLL introduced Archer to the real estate development and investment firm CRG for potential developer-provided debt financing for the transaction. (*Id.* ¶ 38.) Throughout late 2021 and into early 2022, Archer and CRG engaged in regular discussions to reach a debt financing deal. (*Id.*) But for months CRG failed to offer viable financing. (*Id.*) By around March 2022, it was clear to Archer that the JLL/CRG funding option had fallen through, and Archer began to search for its own funding solutions instead. (*Id.* ¶ 40.)

And with its funding in doubt, Archer recognized that the Covington site itself was also in jeopardy. (*Id.* ¶ 41.) Thus, Archer also began to pursue new sites for a facility. (*Id.*) Archer began an independent search separate from the options that it had worked up with JLL. (*Id.*) After conducting extensive research and exploring potential manufacturing partnerships, Archer narrowed down its own list to four sites. (*Id.*) Archer then conducted detailed site visits at each one of those sites and identified a leading option at a facility in Indiana owned by its strategic partner, Stellantis. (*Id.*) JLL played no role in Archer's searches for funding or for a new site. (*Id.*)

Meanwhile, the MOU expired by its terms on June 1, 2022, with no realized transaction. (MOU § 1; Counterclaim ¶ 42.) Nearly three months later, on August 24, 2022, Archer reconfirmed the termination when it informed JLL that it was "terminating the relationship with CRG and sunsetting any ongoing efforts to support our project." (Dkt. 24-1 (Counterclaim, Ex. A).) JLL confirmed back to Archer the same day that it would "proceed accordingly." (*Id.*) So, although no action was required on Archer's part to effect the already-complete termination of the MOU, JLL had notice of termination both in the contract term (that JLL drafted) and through the notice from Archer that JLL acknowledged and confirmed. At no time did JLL submit ▮▮▮▮▮ ▮▮▮▮▮ that is a further condition to any right to tail payments. (Counterclaim ¶ 51.)

### III. PROCEDURAL HISTORY

#### A. JLL filed its complaint demanding a Business and Economic Incentives Fee that the MOU conditioned on JLL closing a real estate transaction.

More than five months after the MOU terminated, Archer announced on November 14, 2022, that it had secured its own independent financing with Synovus Bank and reached an agreement on the Covington site. (Counterclaim ¶¶ 46–47; *see* Compl. ¶ 17.)

On December 13, 2022, JLL sent to Archer an invoice demanding payment of more than $3.5 million for a claimed BEI Fee and out-of-pocket expenses. (Compl. ¶ 18.) JLL then filed this lawsuit asserting claims for breach of contract, anticipatory breach of contract, and unjust enrichment. JLL did not address in its complaint its responsibilities under ▮▮▮▮▮ ▮▮▮▮▮ or its failure to perform. (*See* MOU, Ex. A, §§ 2.1–2.7.) JLL also omitted from its complaint the MOU's provisions describing the contract's term and termination, the conditions for payment of a real estate commission, and JLL's ▮ obligations to administer government-provided benefits and ensure compliance with any conditions ▮▮▮▮▮.[2]

In fact, the MOU confirms that JLL was entitled to a BEI Fee *only* if it had closed a transaction for Archer's new facility *and* performed its other obligations during the MOU's term. Thus, Archer answered the complaint with a denial of any obligation to JLL for the asserted BEI Fee or any relief that JLL requested in its complaint. (Answer at 7; *see id.* ¶¶ 12–17.) Archer asserted the following defenses to JLL's claims: (1) Failure to state a claim; (2) JLL's failure to perform its obligations under the MOU; (3) Waiver due to at least JLL's failure to extend the term of the MOU, contest the expiration of the MOU, or provide the required written notice to Archer if it intended to make a claim for fees based on a transaction after expiration or termination of the MOU; (4) Estoppel based on at least the same facts creating waiver, as well as JLL's express confirmation of the termination of the MOU in August 2022 without giving notice of any claim; (5) Failure of condition precedent; and (6) Archer's good faith. (*Id.* at 7–8.) Archer also asserted

---

[2] Even in its motion to dismiss, JLL continues to mischaracterize the claimed BEI fee as a payment for "negotiation services" (*see* Mot. at 1–2), rather than ▮▮▮▮▮▮▮▮▮▮.

a defense for improper venue, (*id.* at 7), preserving Archer's contractual right to a Santa Clara County jury as the parties agreed in the MOU. (MOU § 9.) After its numbered defenses, Archer also included a standard reservation of its right to assert additional defenses if discovery or other analysis shows that additional defenses are appropriate. (Answer at 8.)

**B.  Archer filed a declaratory judgment counterclaim to resolve the parties' rights under all payment terms in the MOU, including for the real estate services that JLL failed to perform and omitted from its complaint.**

As the MOU confirms and the pleadings will bear out, Archer is entitled to a complete judgment on all issues that JLL asserted in its complaint. But JLL did not address in its complaint the real estate services at the core of the MOU. So Archer filed a declaratory judgment counterclaim that will settle the parties' rights as to *all* payment terms. (Counterclaim at 8–17.) Under Phase 2 ▮▮▮▮▮▮ the MOU recited that, among other things, JLL had to: ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ meeting Archer's "operational needs ▮▮▮▮▮▮▮▮▮▮▮▮ (MOU, Ex. A, at 2 (Phase 2)); secure for Archer ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (*id.* § 2.4); and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* § 2.7). Archer alleged in its counterclaim that JLL failed to perform these obligations, which caused Archer to incur significant expense evaluating at least four other sites, securing alternative financing, and ultimately closing a new deal wholly independently from JLL. (*See* Counterclaim ¶¶ 25, 35–47, 49.) Archer therefore requested a declaratory judgment that it owes JLL no ▮▮▮▮▮▮ ▮▮▮▮▮▮ as a procuring real estate broker under Phase 2 of the MOU," and no "other compensation related to a real estate transaction." (*Id.* ¶¶ 54–56.) Archer also requested a declaration that "JLL has no right to any compensation ▮▮▮▮▮▮▮▮▮▮▮▮ of the MOU"—which listed all compensation terms—and as a result "JLL is entitled to no compensation." (*Id.* ¶ 53 (quoting MOU § 8); *see also id.* ¶ 61.)

Archer also supported its counterclaim with allegations that the following MOU terms require judgment for Archer. JLL failed to address any of these allegations in its complaint:

The MOU included an express tail provision governing all compensation after expiration of the MOU on June 1, 2022. (MOU § 8; *see id.* § 1.) It stated that if the MOU expired by its terms, JLL would be entitled to compensation only if both of the following occurred: (1) ▮▮▮▮▮▮

FENWICK & WEST LLP
ATTORNEYS AT LAW

███████████████████████████████████████████████████ and (2) ███████████████████████████████████████ (*Id.* § 8.) The MOU expired by its terms on June 1, 2022, and the parties did not extend its term. (Counterclaim ¶¶ 42–44.) At no time did JLL furnish to Archer the ███████████████████████████ under Section 8 of the MOU. (*Id.* ¶ 51.) And even if JLL had complied with its notice obligations, Archer closed its transaction on its own in November 2022, ████████████ written into the tail provision. (MOU § 8.)

The BEI Fee was contingent upon a realized transaction and Archer's ███████████ ██████████████████████████████████████ and the first payment was triggered by the ██████ of a transaction during the term. (MOU, Ex. A, at 6 (Section 3 – Compensation).) There was no ██████ of a transaction before the expiration of the MOU as required to warrant any BEI Fee payable to JLL. (Counterclaim ¶ 56.) Moreover, Archer and the ████████████████████████████████████ did not give █████████ ██████ until Archer secured its alternative approach to the Covington site in November 2022, more than five months after expiration. (MOU, Ex. A, at 6; Counterclaim ¶ 56.)

JLL failed to provide a required list of ██████████ including ████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ (MOU, Ex. A, §§ 3.1–3.2; Counterclaim ¶¶ 26, 49.)

### C. JLL moved to dismiss Archer's declaratory judgment counterclaim as allegedly a "mirror image" of JLL's narrower complaint, and to strike portions of Archer's defenses.

Rather than answer Archer's allegations, JLL filed the current motion to dismiss Archer's counterclaim. (Mot. at 3.) JLL argues that the Court should dismiss the counterclaim in its entirety because it "presents identical issues already before the Court via JLL's Complaint." (Mot. at 6.) At the very same time, JLL asks the Court to strike Archer's allegations because they are "wholly unrelated to the issue raised in JLL's Complaint." (*Id.* at 7.) Without identifying any prejudice, JLL also asks the Court to strike Archer's contractual venue defense and standard reservation of rights to amend the Answer with additional defenses.

## IV. SUMMARY OF ARGUMENT

While courts may dismiss a declaratory judgment counterclaim that is a "mirror image" of the plaintiff's claims, Archer's counterclaim seeks broader relief and alleges distinct facts showing JLL's failure to perform under the parties' MOU. *See Stickrath v. Globalstar, Inc.*, 07-cv-1941, 2008 WL 2050990, at *4 (N.D. Cal. May 13, 2008). **First**, Archer seeks a declaration that JLL failed to secure a real estate transaction for Archer and Archer thus owes JLL no compensation under any payment term. JLL failed to address this in its complaint, even though the MOU conditioned receipt of a BEI Fee on JLL closing a transaction. Archer is entitled to a judgment on its broader claim. *Ironshore Specialty Ins. Co. v. Conemaugh Health Sys., Inc.*, 423 F. Supp. 3d 139, 161 (W.D. Pa. 2019); *ACE Am. Ins. Co. v. Old Republic Gen. Ins. Corp.*, 20-cv-482 (WHO), 2020 WL 4001459, at *5 (N.D. Cal. July 15, 2020). **Second**, Archer alleges detailed facts showing JLL's failure to perform, how that failure caused Archer to conduct its own searches for a new development site and independent financing with no help from JLL, and how JLL failed to meet the conditions for payment. There is not "a complete identity of factual and legal issues between the complaint and the counterclaim." *Stickrath*, 2008 WL 2050990, at *4. Indeed, JLL lays this bare when it asks the Court to *strike* these allegations as distinct from its complaint. (Mot. at 7.)

The Court should also deny JLL's motion to strike, as it is a "waste of time and money" in the absence of any demonstrated prejudice to JLL. William Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial § 9:376 (2013). JLL challenges Archer's venue defense, but it is grounded in the parties' forum selection clause, which "should control except in unusual cases." *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018). Archer's venue defense preserves its ability to seek intra-district transfer or a special setting in the unlikely event of trial, and there is no prejudice to JLL in retaining it. Finally, JLL's challenge to Archer's reservation of rights "would serve no real purpose," and the Court should follow other decisions rejecting identical motions. *See Miller v. Ghirardelli Chocolate Co.*, 12-cv-4936, 2013 WL 3153388, at *3 (N.D. Cal. June 19, 2013).

## V. LEGAL STANDARD

A court has discretion whether to hear a declaratory judgment counterclaim, but courts will

not dismiss "just because" a counterclaim and complaint "concern the same subject matter or arise from the same transaction." *Westwood v. Brott*, 22-cv-3374 (CRB), 2022 WL 17418975, at *3 (N.D. Cal. Dec. 5, 2022) (quoting *Stickrath*, 2008 WL 2050990, at *2). Instead, the question is whether the counterclaim is a "mirror image" of the plaintiff's claims. *Stickrath*, 2008 WL 2050990, at *3; *see Castaline v. Aaron Mueller Arts*, 09-cv-2543 (CRB), 2010 WL 583944, at *2 (N.D. Cal. Feb. 16, 2010).

Accordingly, courts will dismiss a counterclaim "only when it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Stickrath*, 2008 WL 2050990, at *4 (citations and quotations omitted). This requires "a careful inquiry into the actual identity of the issues" and a court should "deny a request to dismiss a counterclaim for declaratory judgment unless there is no doubt that it will be rendered moot by the adjudication of the main action." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1406 (3d ed. 1998). In view of this high bar, "the majority rule" is to deny a motion to dismiss "because it is often difficult to determine whether a declaratory judgment counterclaim really is redundant prior to trial." *Brawley v. Alltel Corp.*, 08-cv-68, 2008 WL 2065976, at *2 (D. Ariz. May 13, 2008) (citing 6 Wright, Miller & Kane § 1406). As this Court has held, a counterclaim should proceed if it serves "any useful purpose." *Westwood*, 2022 WL 17418975, at *3 (quoting *Stickrath*, 2008 WL 2050990, at *2).[3]

The moving party bears the burden of proof and "the court must view the pleading under attack in the light most favorable to the pleader." *Equine Legal Sols., Inc. v. Buntrock*, 07-cv-4976 (CRB), 2008 WL 111237, at *2 (N.D. Cal. Jan. 9, 2008).

VI.   **ARGUMENT**

    A.    **The Court should deny the motion to dismiss because Archer's counterclaim seeks a declaratory judgment concerning contract terms and facts that JLL ignored in its complaint.**

The Court should exercise its discretion to deny JLL's wasteful and dilatory motion to

---

[3] Courts apply the same test whether they apply Rule 12(b)(6) or Rule 12(f). *Compare Westwood*, 2022 WL 17418975, at *2 n.1 ("a motion to strike is an improper tool to seek dismissal of a counterclaim"), *with Stickrath*, 2008 WL 2050990, at *4; *Rituel De Fille, Inc. v. And So It Is!, LLC*, 20-cv-11024, 2021 WL 4974796, at *2 (C.D. Cal. Mar. 23, 2021) (applying Rule 12(f) because the "redundancy, not the adequacy, of the counterclaim is at issue").

dismiss. The Court's decisions make clear that it will only dismiss a declaratory judgment counterclaim if such a claim serves no "useful purpose" because it is a "mirror image" of the claims already at issue. That is not the case here. First, Archer seeks a declaration that JLL failed to secure a real estate transaction for Archer's new facility and that as a result Archer owes JLL no real estate commission and no other compensation, which JLL does not address in its complaint. Second, Archer also alleges detailed facts of JLL's failure to perform, how that caused Archer to conduct its own searches for a new development site and independent financing, with no help from JLL, and how JLL failed to meet the conditions for any payments. Archer's counterclaim is no mere "mirror image" of JLL's complaint, as the motion to strike these allegations lays bare.

Archer is entitled to a comprehensive declaratory judgment that addresses all payment terms, and affirms Archer's interpretation, not only those that JLL asserted in its complaint. Indeed, courts are typically reluctant to dismiss a counterclaim in a contract dispute—"even where the issues are identical"—because a ruling "for a plaintiff on its claim does not necessarily mean that the defendant would be entitled to judgment on its claim." *Ironshore*, 423 F. Supp. 3d at 161; *accord ACE*, 2020 WL 4001459, at *5. For example, in *Ironshore*, the plaintiff claimed that the defendant breached contract terms requiring it to notify the plaintiff of potential insurance claims and cooperate in litigating them, and that as a result the plaintiff had no duty to cover the disputed claims. *Id.* at 161–62. In contrast, the defendant's declaratory judgment counterclaim alleged that it performed *all obligations* under the contract, that the plaintiff failed to indemnify, and that as a result the defendant had a right to *full coverage going forward*. *Id.* Applying the "mirror image" test, the court held that the defendant sought "different, broader relief" than the plaintiff and denied the plaintiff's motion to dismiss. *Id.* at 160 (capitalization altered). As Judge Orrick described similar facts in *ACE*:

> A ruling adverse to plaintiff on plaintiff's claim would merely result in a judgment that plaintiff was not entitled to the relief requested; although it might logically follow from that judgment that defendants' interpretation of the contract was the correct one, defendants would not be entitled to a judgment to that effect unless they specifically requested one.

*ACE*, 2020 WL 4001459, at *5 (quotation omitted).

The same rule applies here: Archer's requested relief is broader than JLL's claims. Archer alleges that JLL failed to perform the core commercial real estate services that the parties described in their MOU, and that Archer therefore owes no compensation to JLL under any payment term. (Counterclaim ¶¶ 23–25, 49.) Among other obligations, Archer alleges that JLL failed to: ███ ███████████████████████████████████ meeting Archer's █████████ ██████████████████████ (MOU, Ex. A, at 2 (Phase 2)); secure for Archer █████████ ██████████████ (*id.* § 2.4); and ███████████████████████████████ (*id.* § 2.7). (Counterclaim ¶ 49.) The MOU also made JLL's closing of a deal a prerequisite to any BEI Fee. (MOU, Ex. A, at 6.) As a result, and taken together with the MOU's termination on June 1, 2022, and JLL's failure to comply with the "tail" provision (*see* MOU §§ 1, 8; Counterclaim ¶¶ 42–45, 51–52), Archer alleges that it owes JLL no ██████████████ or any other compensation related to a real estate transaction." (Counterclaim ¶ 55.) Indeed, "Archer disputes that it has any retrospective or prospective contractual obligations." (*Id.* ¶ 61.) JLL placed all these contract terms at issue with its claim to a BEI Fee that the MOU conditioned on JLL's performance, and the Court should—and at least *may*—need to decide them all.

JLL cites none of these contract provisions in its complaint and seeks no resolution from the Court as to their effect on Archer's payment obligations. (*See* MOU, Ex. A, at 1–4.) JLL states only that the MOU "provides that JLL's brokerage and incentive teams would provide various services to Archer, including, but not limited to, location selection services, real estate acquisition services, and business and economic incentive negotiation services." (Compl. ¶ 11.) Archer's counterclaim goes much further and is thus not a "mirror image."

In addition, because Archer also alleges facts about JLL's failure to perform that appear nowhere in JLL's complaint, there is also not "a complete identity of factual and legal issues between the complaint and the counterclaim." *Stickrath*, 2008 WL 2050990, at *4. Archer's allegations include that "JLL failed to identify a single viable financing option" for a real estate transaction, despite its obligation "to provide Archer with alternative financing structures and ███ options for financing a transaction, including evaluations ██████████████ ████████ (Counterclaim ¶¶ 36–37 (quoting MOU, Ex. A, § 2.4).) Thus, after JLL's sole proposed

FENWICK & WEST LLP
ATTORNEYS AT LAW

debt financing option "failed to offer viable financing," Archer was forced to conduct its own searches for a new development site and independent financing, which "JLL played no role in." (Counterclaim ¶¶ 38–41.) These "new facts" about the dispute "are unique to the counterclaim," and defeat JLL's motion. *Rituel De Fille*, 2021 WL 4974796, at *2. Because Rule 26 sets the scope of discovery as information "relevant to any party's claim or defense," the counterclaim allegations define the scope of issues in play and it is by no means surplusage. *See* Fed. R. Civ. P. 26(b)(1).

Rather than answer these charges that it failed to perform, JLL argues that they "are wholly unrelated to" *its* claims. (Mot. at 7.) But the allegations are relevant to *Archer*'s claims. Moreover, even "allegations that provide background information, historical material, or other matter of an evidentiary nature will not be stricken" when the moving party makes no showing of undue prejudice. *Polaris PowerLED Techs., LLC v. Nintendo Co.*, 623 F. Supp. 3d 1132, 1136 (W.D. Wash. 2022) (internal citations and quotations omitted). Archer's allegations "provide the court with relevant information regarding the parties and their businesses," offer "a fuller understanding of the dispute," and will help the Court and parties to frame appropriate discovery, should this case reach that stage. *See id*. at 1137.

As a result, Archer's counterclaim is no "mirror image" of JLL's complaint, and the Court should deny JLL's motion to dismiss.

### B. The Court should deny the motion to strike Archer's affirmative defenses as they are legally sufficient and JLL has shown no prejudice from them.

The Court should likewise deny JLL's motion to strike Archer's affirmative defenses. While Rule 12(f) gives the courts the discretion to strike "an insufficient defense," the moving party typically must show not just that challenged material is subject to striking, but that it would suffer prejudice from the failure to grant the motion. *Miller*, 2013 WL 3153388, at *3. That is because a motion to strike is "usually a waste of time and money without such a showing." William Schwarzer, et al., Cal. Practice Guide: Fed. Civ. Pro. Before Trial § 9:376 (2013). Indeed, motions to strike "are generally disfavored" because of their common use "as delaying tactics" and because claims and defenses should be resolved on the merits. *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010); *see Harris v. Chipotle*

*Mexican Grill, Inc.*, 303 F.R.D. 625, 628–29 (E.D. Cal. 2014) ("The court cannot conceive how these defenses will cost ... unnecessary time and resources. In fact, it is more likely the parties and the court have already needlessly expended more resources on this motion." (internal quotations and citation omitted)). The present motion is just the sort of wasteful and dilatory motion discussed in the case law, as JLL failed to show that Archer's defenses are legally insufficient and did not even *attempt* to make a showing of prejudice. (Mot. at 9.)

JLL first challenges Archer's defense of improper venue. That defense is grounded in the parties' forum selection clause that specifies: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ based on the MOU ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (MOU § 9; *see* Answer at 7.) The Ninth Circuit directs that "a forum-selection clause 'should control except in unusual cases.'" *Yei A. Sun*, 901 F.3d at 1088 (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013)). The Court must enforce such a clause unless there is a "strong showing" of fraud, violation of a "strong public policy" of the forum in which the action is brought, or enforcement of "'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Id.* (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 18 (1972)). JLL has no authority whatsoever for its argument that the clause here is "contrary to the Court's authority" to reassign cases among the judges in the district, let alone for its suggestion that the Court is powerless to enforce the clause at the time of trial on that basis. JLL thus has failed to show Archer's defense is subject to striking.

To be clear, Archer expects that this case should resolve in its entirety by dispositive motions. But if not, Archer bargained for the right to a Santa Clara County jury and has asserted the defense to preserve the ability to seek intra-district transfer or a special setting in the unlikely event that this case proceeds to a trial. (*See* Answer at 2 (Archer's reservation of right to seek transfer "or special setting for pretrial or trial in Santa Clara County.")) Respectfully, Archer submits that it has taken a balanced approach by reserving rights rather than asking the Court to decide an early motion concerning the jury that may shortly become moot. At the very least, there

is no prejudice to JLL in permitting Archer to retain the defense until such time as it becomes necessary to decide the issue. The Court should therefore deny the motion to strike.

JLL also challenges Archer's statement reserving "the right to assert additional defenses if discovery or other analysis shows that additional defenses are appropriate." (Answer at 8.) This, too, is a waste of the Court's time. A court may strike a reservation of defenses if doing so would streamline the resolution of the case and focus the jury's attention. *Miller*, 2013 WL 3153388, at *4. But in *Miller*, the court found "no authority compelling the court to grant" an identical motion to strike a reservation of rights where, like here, striking "would serve no real purpose." *Id.* JLL states that this language should be stricken because it "is not an affirmative defense." (Mot. at 9.) But Archer pled the reservation not as a substantive defense to the claims, but to put all parties on notice that discovery may lead it to assert additional defenses. (This is evident from the face of the Answer, as the challenged language follows Archer's seven numbered defenses under a separate header, "Reservation of Defenses." *See* Answer at 7–8.)[4] And while JLL cites one case, *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464 (S.D. Cal. 2013), where the court elected to strike the reservation, the better view is the one expressed by the court in *Global Mortgage Funding*, which was "puzzled" by a motion requesting that relief, and noted that the reservation of defenses "could have no impact on the proceeding" and imposed no burden. 2008 WL 5264986, at *5. Archer's use of this standard reservation does not prejudice JLL, and striking it would serve no purpose, and the Court should thus deny the motion as to this entirely commonplace term.

## VII. CONCLUSION

For these reasons, the Court should deny JLL's motion to dismiss and require JLL to answer Archer's counterclaim.

---

[4] This fact distinguishes JLL's primary cited authorities. In both *United States v. Global Mortgage Funding, Inc.*, 07-cv-1275, 2008 WL 5264986, at *5 (C.D. Cal. May 15, 2008) and *Joe Hand Promotions, Inc. v. Davis*, 11-cv-6166, 2012 WL 4803923, at *7 (N.D. Cal. Oct. 9, 2012), the nonmoving party had expressly pled its reservation of rights *as an affirmative defense.* In *EEOC v. Timeless Investments, Inc.*, 734 F. Supp. 2d 1035, 1055 (E.D. Cal. 2010), the court resolved this issue at *summary judgment*, and even then only after expressing skepticism that the defendant's reservation of rights would have "any effect on this case."

| | | |
|---|---|---|
| 1 | Dated: June 1, 2023 | FENWICK & WEST LLP |
| 2 | | |
| 3 | | By: */s/ Todd R. Gregorian* |
| | | Todd R. Gregorian |
| 4 | | Attorneys for Defendant Archer Aviation, Inc. |