| | |
|---|---|
| 1 | LAURENCE F. PULGRAM (CSB No. 115163) |
| | lpulgram@fenwick.com |
| 2 | TODD R. GREGORIAN (CSB No. 236096) |
| | tgregorian@fenwick.com |
| 3 | GREGORY P. ADAMS (CSB No. 292391) |
| | gadams@fenwick.com |
| 4 | SOFIA RITALA (CSB No. 342253) |
| | sritala@fenwick.com |
| 5 | FENWICK & WEST LLP |
| | 555 California Street, 12th Floor |
| 6 | San Francisco, CA 94104 |
| | Telephone: 415.875.2300 |
| 7 | Facsimile: 415.281.1350 |

Attorneys for Defendant
ARCHER AVIATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JONES LANG LASALLE AMERICAS, INC., a Maryland Corporation, | Case No.: 5:23-cv-00791-CRB |
| Plaintiff, | **ARCHER'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| ARCHER AVIATION, INC., and DOES 1 through 10, inclusive, | Date: October 6, 2023 |
| | Time: 10:00 a.m. |
| Defendant. | Dept: Courtroom 6, 17th Floor |
| | Judge: Honorable Charles R. Breyer |
| | Trial Date: None |

**REDACTED VERSION OF DOCUMENT
SOUGHT TO BE FILED UNDER SEAL**

Fenwick & West LLP
Attorneys At Law

## NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS

Defendant Archer Aviation Inc. ("Archer") gives notice that on October 6, 2023, at 10:00 a.m., or as soon as feasible, in the United States District Court for the Northern District of California, before the Honorable Charles R. Breyer, Archer will move this Court under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.

Archer seeks a judgment dismissing all claims asserted by Plaintiff Jones Lang LaSalle Americas, Inc. ("JLL") and granting declaratory relief for Archer.

# TABLE OF CONTENTS

Page

NOTICE OF MOTION FOR JUDGMENT ON THE PLEADINGS ............................................. I

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I. INTRODUCTION ............................................................................................................ 1

II. BACKGROUND .............................................................................................................. 2

    A. The parties entered a Memorandum of Understanding ("MOU") for JLL to locate and secure Archer's new manufacturing facility. ............................ 2

    B. JLL failed to close a transaction during the MOU's Term, then claimed compensation for a deal that closed nearly six months after expiration. ................ 5

III. SUMMARY OF ARGUMENT ....................................................................................... 6

IV. LEGAL STANDARDS .................................................................................................... 7

V. ARGUMENT .................................................................................................................... 8

    A. JLL's breach of contract claim fails. .......................................................................... 8

        1. Archer owes no fee because JLL did not close a real estate transaction. ............................................................................................... 8

        2. Archer owes no fee because JLL made no claim under the tail provision. ................................................................................................ 9

        3. JLL's belated suggestion that the parties established a different "course of dealing" contradicts California law, the MOU, and the pleadings. ............................................................................................... 10

    B. JLL's remaining claims also fail. ............................................................................ 12

        1. The pleadings fail to establish a cause of action for anticipatory repudiation. ............................................................................................. 12

        2. JLL's unjust enrichment claim fails under California law ........................ 12

    C. The Court should grant Archer judgment on its claim for declaratory relief. ................................................................................................................. 13

VI. CONCLUSION ............................................................................................................... 14

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 7

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ........................................................................................... 12, 13

*Bumpus v. U.S. Fin. Life Ins. Co.*,
  No. 20-cv-00926 (MCE), 2022 WL 4366979 (E.D. Cal. Sept. 21, 2022) .............................. 13

*Casa Herrera, Inc. v. Beydoun*,
  32 Cal. 4th 336 (2004) .......................................................................................................... 11

*Cooper v. Simpson Strong-Tie Co.*,
  460 F. Supp. 3d 894 (N.D. Cal. 2020) ........................................................................... 6, 7, 8

*Daniels-Hall v. Nat'l Educ. Ass'n*,
  629 F.3d 992 (9th Cir. 2010) ............................................................................................ 8, 10

*Dias v. Spartan Micro, Inc.*,
  No. 22-cv-00834 (JVS), 2022 WL 17216820 (C.D. Cal. Sept. 14, 2022) ............................. 13

*Gerlinger v. Amazon.com, Inc.*,
  311 F. Supp. 2d 838 (N.D. Cal. 2004) .................................................................................... 7

*Gold Mining & Water Co. v. Swinerton*,
  23 Cal. 2d 19 (1943) ............................................................................................................. 12

*Goldberg v. BAC Home Loans Servicing, LP*,
  No. 13-cv-0036, 2013 WL 2390718 (S.D. Cal. May 30, 2013) ............................................ 11

*Graham-Sult v. Clainos*,
  756 F.3d 724 (9th Cir. 2014) ................................................................................................ 12

*Gregg v. Haw., Dep't of Pub. Safety*,
  870 F.3d 883 (9th Cir. 2017) .................................................................................................. 7

*Jolley v. Chase Home Fin., LLC*,
  213 Cal. App. 4th 872 (2013) ............................................................................................... 13

*Kelly v. Worth Holdings, LLC*,
  No. 17-cv-02466 (EMC), 2017 WL 4156186 (N.D. Cal. Sept. 18, 2017) .......................... 2, 7

*Long v. Int'l Paper Co.*,
  902 F.2d 39 (9th Cir. 1990) .................................................................................................. 10

FENWICK & WEST LLP
ATTORNEYS AT LAW

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR JUDGMENT ON THE PLEADINGS

iii

Case No. 5:23-cv-00791-CRB

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Marina Tenants Ass'n v. Deauville Marina Dev. Co.*,
   181 Cal. App. 3d 122 (1986) .................................................................................................. 13

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
   No. 07-cv-912, 2008 WL 346421 (S.D. Cal. Feb. 6, 2008) ...................................................... 11

*Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) .................................................................................................. 12

*Milne ex rel. Coyne v. Stephen Slesinger, Inc.*,
   430 F.3d 1036 (9th Cir. 2005) .................................................................................................... 7

*Music v. Bank of Am., Nat'l Ass'n*,
   No. 14-cv-04776 (JCS), 2015 WL 8477614 (N.D. Cal. Dec. 9, 2015) ....................................... 8

*O'Connor v. Uber Techs., Inc.*,
   No. 13-cv-3826 (EMC), 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) .................................... 13

*Oasis W. Realty, LLC v. Goldman*,
   51 Cal. 4th 811 (2011) ............................................................................................................... 8

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996) .................................................................................................... 13

*Richman v. Hartley*,
   224 Cal. App. 4th 1182 (2014) ........................................................................................... 8, 10

*Santa Fe Pointe, LP v. Greystone Servicing Corp.*,
   No. 07-cv-5454 (MMC), 2009 WL 1322874 (N.D. Cal. May 8, 2009) ................................... 12

*Sixth & Bryant, LLC v. CORT Furniture Rental Corp.*,
   No. 20-cv-06444 (JST), 2022 WL 4245463 (N.D. Cal. Aug. 17, 2022) .................................. 10

*Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*,
   231 Cal. App. 4th 1131 (2014) ................................................................................................ 12

*Swafford v. Int'l Bus. Machs. Corp.*,
   383 F. Supp. 3d 916 (N.D. Cal. 2019) ..................................................................................... 12

*Thompson v. Ill. Dep't of Pro. Regul.*,
   300 F.3d 750 (7th Cir. 2002) ...................................................................................................... 8

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ...................................................................................................... 7

*Wilson & Wilson v. City Council of Redwood City*,
   191 Cal. App. 4th 1559 (2011) ................................................................................................ 13

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Yang v. DAR Al-Handash Consultants,*
   250 F. App'x 771 (9th Cir. 2007) ............................................................................................ 7

**STATUTES**

28 U.S.C. § 2201 ............................................................................................................................ 14

Cal. Civ. Code § 1439 .................................................................................................................... 10

Cal. Civ. Proc. Code § 1060 ........................................................................................................... 13

Cal. Civ. Proc. Code § 1856 ........................................................................................................... 11

Federal Declaratory Judgment Act ................................................................................................ 13

**RULES**

Fed. R. Civ. P. 12(c) ........................................................................................................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This case should not progress past the pleadings. The express terms of the contract foreclose the attempt by Plaintiff Jones Lang LaSalle Americas, Inc. to extract a windfall from Defendant Archer Aviation Inc.

Archer hired JLL to broker a real estate deal for a new manufacturing facility. As is industry standard, the bulk of JLL's compensation was contingent on it closing a deal for an appropriate site. Here, its responsibilities also included facilitating the financing, as well as obtaining government incentives and managing Archer's compliance with the requirements to receive them. But JLL let the agreement expire and abandoned the project after it failed to develop viable financing for Archer's preferred location. Archer secured a facility for itself nearly six months after the termination of the parties' agreement, having conducted a new nationwide location search and obtained its own financing, none of which JLL assisted with. JLL nonetheless filed suit against Archer seeking more than $3.5 million.

The contract—which JLL itself drafted—provided that JLL would receive a commission upon its successful completion of a deal. And it would also receive a percentage of the government benefits upon ████████████████████████████████████████████████████████ ████████████████████████████████████████████ If JLL successfully closed a deal, Archer bore the risk that it would owe JLL the full fee, ████████████████ ████████████ But JLL never closed any deal, let alone one with an approved benefits package. JLL's answer to the counterclaim even denies knowledge of the terms of the benefits that Archer secured at its close. (Dkt. 39-3 (hereafter "JLL's Am. Answer"), ¶ 48.) JLL is entitled to no compensation under the agreement's clear allocation of the risks.

Moreover, any squabbles that JLL may raise concerning its alleged contributions or its failed performance are irrelevant. JLL let the contract expire without any deal in place, and months later confirmed that termination in writing. Those admitted facts are crucial here, since the agreement contains an express "tail" provision concerning payment for any work-in-progress at the end of the term. To make a claim for payment, (i) JLL was specifically required to ████████

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  ███████████████████████████████████████ and then (ii) ████████████████████
2  ████████████████████████████████████████████  It is undisputed that JLL satisfied neither
3  condition here.  The purpose of such a provision is patent: it forces the parties to identify and resolve
4  any payment disputes, and it provides Archer a clear definition of when it can make alternative
5  arrangements free and clear of all obligations to its unsuccessful former broker.

6  JLL admits that it is entitled to no commission for the deal that Archer secured
7  independently.  Yet JLL still seeks more than $3.5 million for incentives that the agreement makes
8  dependent on *JLL* closing a transaction for Archer, and that JLL pleads were *not* secured before the
9  agreement terminated.  The claims asserted by JLL thus contradict the agreement, and Archer is
10 entitled to judgment on the pleadings.

## II. BACKGROUND

### A. The parties entered a Memorandum of Understanding ("MOU") for JLL to locate and secure Archer's new manufacturing facility.

Archer is a leading developer of electric vertical takeoff and landing (eVTOL) aircraft with a vision to redefine what air travel can be: low cost, low noise, with the safety of commercial airlines.  (*See* Dkt. 24, pp. 8–17 (hereafter "Counterclaim"), ¶ 7.)  Archer is growing rapidly, having secured orders to supply United Airlines with eVTOL aircraft and agreeing to collaborate on a strategic high-volume manufacturing facility with Stellantis, one of the largest automobile companies in the world.  (*Id.*, ¶ 8.)[1]

Archer bases its motion for judgment on the following facts and the terms of the MOU, which are undisputed.[2]  Needing to ramp up its manufacturing capabilities, two years ago Archer approached JLL seeking help to identify and secure a property for its planned new facility.  (*Id.*, ¶ 9; JLL's Am. Answer, ¶ 9.)   JLL provides comprehensive commercial real estate services,

---

[1] JLL denied the allegations in Paragraphs 7 and 8 of the Counterclaim on the basis of lack of sufficient information to admit or deny them.  (JLL's Am. Answer, ¶¶ 7–8).  Archer does not rely on these background facts, or any other disputed facts, for the relief sought in this motion.

[2] JLL attached the MOU to its complaint and the Court may consider it for this motion.  *Kelly v. Worth Holdings, LLC*, No. 17-cv-02466 (EMC), 2017 WL 4156186, at *3 (N.D. Cal. Sept. 18, 2017).  Archer has provided parallel citations to each party's pleadings.

1  including site search, evaluation, selection, negotiation, and acquisition.  (Counterclaim, ¶ 10;
2  JLL's Am. Answer, ¶ 10.)   JLL also offers capital planning and tax incentive services,
3  comprehensive program management, and design and construction management. (*Id.*)  Archer thus
4  looked to JLL to conduct a site search and secure a facility to meet its manufacturing needs.
5  (Counterclaim, ¶¶ 9–10; JLL's Am. Answer, ¶¶ 9–10.)

6  On May 15, 2021, Archer and JLL entered a Memorandum of Understanding ("MOU"),
7  documenting that JLL would perform commercial real estate services on behalf of Archer. (*See*
8  Dkt. 1-2 (MOU), § 1.)  The goal was for JLL to secure a location for Archer's new facility as well
9  as the financing and government incentives that would allow Archer to build it out.  (*Id.*; *see*
10  Compl., ¶¶ 9–11; Dkt. 24, pp. 1–8 (hereafter "Archer's Answer"), ¶¶ 9–11.)

11  The MOU, which JLL admits that it drafted and presented to Archer, listed the services that
12  JLL had to perform in an "Exhibit A."  (Counterclaim, ¶¶ 14–15, 23; JLL's Am. Answer, ¶¶ 14–
13  15, 23.)  In ▇▇▇▇▇ JLL would identify locations for Archer's manufacturing facility meeting
14  criteria for ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and other factors based on Archer's
15  operational needs.  (MOU, § 1; *id.*, Ex. A, §§ 1.1–1.3.)  In ▇▇▇▇▇▇▇▇▇▇▇ JLL would
16  negotiate and close a transaction.  (*Id.*, Ex. A, §§ 2.1–2.7.)  Among other obligations, JLL had to:
17  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
18  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*id.* at 2 (Phase 2)); develop for Archer ▇▇▇▇▇▇
19  ▇▇▇▇▇▇▇▇▇▇ (*id.*, § 2.4); and negotiate the final terms of a real estate transaction, (*id.*,
20  § 2.7).

21  Section 3 of Exhibit A described related ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
22  ▇▇▇ that JLL would perform alongside the acquisition ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
23  (*Id.*, § 3.)  Here, JLL would ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
24  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  The MOU required JLL to provide a list
25  of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
26  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
27  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
28  ▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.*, §§ 3.1–3.2.)

FENWICK & WEST LLP
ATTORNEYS AT LAW

The MOU contained clear payment terms for these services. For closing a real estate transaction, JLL would earn ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 3 (Phase 2 – Compensation).) JLL could also earn additional compensation for ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 5–6 (Section 3 – Compensation).) The MOU defined ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 5.) The MOU also required the parties to ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*)

The MOU reflects a specific risk allocation with respect to ▮▮▮▮▮▮▮▮▮▮▮▮ It required Archer's ▮▮▮▮▮▮▮▮▮▮▮▮ at the location where JLL closed a new facility for Archer, and provided that the first payment ▮▮▮▮▮ would be due ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 6.) Without a deal, ▮▮▮▮▮ was due. On the other hand, if JLL successfully closed a deal, Archer had to pay ▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 5–6 (Section 3 – Compensation).) In other words, *if* JLL closed a deal, Archer bore the risk that it would owe the full fee ▮▮▮▮▮▮▮▮▮▮▮▮

The MOU also included a provision specifying that the MOU would terminate after just over one year: ▮▮▮▮▮▮▮▮▮▮▮▮ (MOU, § 1.)

Finally, the MOU also included a tail provision governing all payments after ▮▮▮▮▮ Under it, JLL could receive credit for negotiations still-in-progress *if* they led to a transaction ▮▮▮▮▮ That tail provision stated that if the MOU expired by its terms, JLL would have a right to compensation only if both of the following were satisfied: (1) ▮▮▮▮▮▮▮▮▮▮▮▮

1 ███████████████████████████████ and (2)
2 ████████████████████████████ (*Id.* § 8.)  Only then would ███████
3 ████████████████████████████████████████████ (*Id.*; *see id.* § 6
4 ██████████████████████████████████████████████

### B. JLL failed to close a transaction during the MOU's Term, then claimed compensation for a deal that closed nearly six months after expiration.

The parties began work on Phase 1 in Spring 2021, starting with a nationwide list of potential locations for Archer's facility.  (Counterclaim, ¶ 35; JLL's Am. Answer, ¶ 35.)  They narrowed the list to nine sites, then two, and by October 2021, Archer had settled on a potential finalist site in Covington, Georgia.  (*Id.*)  But over the next seven months JLL failed to close a transaction for Archer, and the MOU terminated on ████████ according to its terms.  (*See* MOU, § 1.)  Then, on August 24, 2022, Archer reconfirmed that termination to JLL.  Archer's Glen Burks sent an email to JLL's Executive Managing Director Trevor Ragsdale, which stated: "As discussed previously, Archer is comfortable terminating the relationship with CRG and sunsetting any ongoing efforts to support our project."  (Counterclaim, Ex. A; *see id.*, ¶ 45; JLL's Am. Answer, ¶ 45.)  The same day, Mr. Ragsdale responded, "Okay, we will proceed accordingly." (Counterclaim, Ex. A.)

JLL also failed to provide notice under the MOU's tail provision.  (*See* MOU, § 8.)  JLL does not allege that it provided written notice ████████████████████ listing ██ ████████████████████████████████████████████ (*Id.*; *see generally* Compl.)  And JLL does not allege that, ████████████████ Archer entered █████████████████████ (*See generally* Compl.; *see* MOU, § 8.)  Nor does JLL allege that the parties ever executed an ██████████████████████████ (*Id.*, Ex. A, at 5; *see generally* Compl.)  Instead, it is expressly alleged (and undisputed) that Archer closed a transaction "on or about November 14, 2022," nearly six months after the termination date in the MOU.  (Compl., ¶ 17; Archer's Answer, ¶ 17.)  Indeed, "JLL admits that it is not entitled to and does not seek a ███

1  ████████ for the transaction that Archer closed. (JLL's Am. Answer, ¶ 55; *see* Counterclaim,
2  ¶ 55.)

3  On December 13, 2022, one month after Archer secured its own closing and more than six
4  months after the termination of the MOU, JLL sent to Archer an invoice demanding more than $3.5
5  million payable over nearly two years. (Compl., ¶ 18; Archer's Answer, ¶ 18.) JLL then filed this
6  lawsuit asserting claims for breach of contract, anticipatory breach of contract, and unjust
7  enrichment. Archer counterclaimed for a declaratory judgment that it owes no compensation to
8  JLL under any payment term. (*See, e.g.*, Counterclaim, ¶ 61; JLL's Am. Answer, ¶ 61.)

### III.  SUMMARY OF ARGUMENT

Archer contracted with JLL to secure a manufacturing facility and negotiate local government incentives that Archer would use to build it out. (*See* MOU, § 1; *id.*, Ex. A.) But the parties agreed to a fixed term agreement, and there is no allegation that JLL closed a transaction for Archer during that term or afterward. (*See, e.g.*, Compl., ¶ 17; Archer's Answer, ¶ 17; MOU, § 1.) Instead, Archer closed a transaction on its own nearly six months after the parties' relationship ended. (*See id.*) Under the terms of the MOU—which JLL drafted—the parties agreed to clear payment terms. Those terms "trump" any contrary allegations in the complaint and foreclose JLL's claims. *See Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894, 908–09 (N.D. Cal. 2020).

*First*, the parties agreed that JLL would close a transaction for Archer's new manufacturing facility before the MOU expired on ████████ (MOU, § 1.) If JLL had done so, it would have received both a standard ████████ for commercial real estate services and an additional ████████████████████████████████████ ████████████████████████████ (*Id.*, Ex. A, at 3–6.) But it is undisputed that JLL did not close a transaction before ████████ JLL expressly pleads that Archer closed the transaction nearly six months later, and JLL has never sought a ████████ thus conceding that it did not close the deal. (Compl., ¶¶ 17–18; *id.*, Ex. 4 (Dec. 13, 2022, Invoice); Archer's Answer, ¶¶ 17–18; *see* Counterclaim, ¶ 55; JLL's Am. Answer, ¶ 55.) And because JLL did not close the transaction for the Covington facility, it is entitled to no compensation.

*Second*, JLL failed to comply with the MOU's tail provision, under which JLL could claim credit for negotiations that led eventually to a deal. (*See* MOU, § 8.) JLL did not plead compliance with the requirement that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And even if JLL had so alleged, Archer closed the transaction in November 2022, well after ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ and thus that passage of time alone would suffice to foreclose JLL's demand. (*Id.*) Instead of pleading performance, JLL alleges only the vague suggestion that its services contributed to "Archer's receipt of offers for economic incentives." (Compl., ¶¶ 14–15.) But the MOU's precise payment terms control. *See Cooper*, 460 F. Supp. 3d at 908–09.

Because JLL does not and cannot plead that it performed under the MOU during the term, or that it met the conditions to claim compensation afterward, it cannot plead breach of contract or anticipatory breach. JLL also cannot bring a claim for unjust enrichment because the parties have an express contract that they agreed would govern their relationship. JLL's claims fail as a matter of law, and the Court should therefore grant judgment on the pleadings for Archer.

## IV. LEGAL STANDARDS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for judgment on the pleadings is "functionally identical" to a motion to dismiss under Rule 12(b)(6). *Gregg v. Haw., Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017). The Court may grant judgment on the pleadings "when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005). Like a motion to dismiss, the Court need not accept as true conclusory factual allegations or conclusions of law. *Gregg*, 870 F.3d at 887; *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

The Court may also consider the contract attached to the complaint. *See Kelly*, 2017 WL 4156186, at *3; *accord United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Interpretation of an unambiguous contract is a purely legal question, determined by the Court, and appropriate for judgment on the pleadings. *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004); *see also Yang v. DAR Al-Handash Consultants*, 250 F. App'x 771, 773 (9th Cir. 2007). Moreover, "when a written instrument contradicts allegations in a complaint to which it is attached,

the exhibit trumps the allegations." *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 754 (7th Cir. 2002); *Cooper*, 460 F. Supp. 3d at 908–09.  Thus, the Court need not "accept as true allegations that contradict" the parties' agreement, "or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (citation omitted).

## V.   ARGUMENT

### A.   JLL's breach of contract claim fails.

California law governs the interpretation of the contract and the claims of breach.  (*See* MOU, § 9.)   The elements of a breach of contract claim are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  When a plaintiff fails to allege performance, it "cannot validly bring a breach of contract claim." *Music v. Bank of Am., Nat'l Ass'n*, No. 14-cv-04776 (JCS), 2015 WL 8477614, at *7 (N.D. Cal. Dec. 9, 2015), *aff'd sub nom. Music v. Bank of Am., N.A.*, 717 F. App'x 658 (9th Cir. 2017); *accord Richman v. Hartley*, 224 Cal. App. 4th 1182, 1192 (2014).

As discussed below, the admitted allegations of the pleadings show that JLL failed to perform under the contract in several different ways, all of which preclude its claim to a percentage of Archer's future government benefits.  Accordingly, Archer is entitled to judgment on the pleadings on the breach of contract claim.

### 1.   Archer owes no fee because JLL did not close a real estate transaction.

The MOU provided that JLL would receive a ▮▮▮▮ if it closed a real estate transaction for Archer with accompanying ▮▮▮▮▮▮▮▮▮▮  The MOU states that the ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a condition that could occur only after JLL secured a particular facility where relevant government entities were located and had offered incentives capable of Archer's acceptance.  (MOU, Ex. A, at 6.)  JLL failed to allege that it met this condition.  Instead, the complaint refers throughout to "benefits accepted by Archer" (Compl., ¶¶ 12, 26, 34), omitting mention of the actual contract language.  JLL also pled that Archer closed the transaction for a

FENWICK & WEST LLP
ATTORNEYS AT LAW

Covington facility "on or about November 14, 2022." (Compl., ¶ 17; Archer's Answer, ¶ 17.) That date is nearly six months after the MOU expired on ▇▇▇▇▇▇▇ (MOU, § 1), and nearly three months after JLL's representative confirmed in writing that the relationship had terminated and JLL would "proceed accordingly." (JLL's Am. Answer, ¶ 45; *see* Counterclaim, ¶ 45; *id.*, Ex. A.) Finally, JLL admitted "that it is not entitled to and does not seek a ▇▇▇▇▇▇▇ pursuant to terms of the MOU." (JLL's Am. Answer, ¶ 55; *see* Counterclaim, ¶ 55; Compl., Ex. 4 (Dec. 13, 2022, Invoice).) That, too, is an admission that JLL did not close any deal for Archer, since closing a deal was a requirement to receive the commission. (MOU, Ex. A, at 3.) Thus, Archer owes no fee for the government incentives that it finalized and agreed to when it closed its own transaction months after JLL had failed to do so and the contract had expired.

**2.    Archer owes no fee because JLL made no claim under the tail provision.**

JLL's theory is that it "provided extensive business and economic incentive negotiation services," and that these "resulted in Archer's receipt and acceptance of an incentives offer" months after JLL ceased work and the MOU had expired. (Compl., ¶¶ 1, 13, 24, 25.) But even assuming that JLL contributed *efforts* towards the transaction that Archer closed, JLL still is not entitled to payment because JLL made no claim under the tail provision. (*See* MOU, § 8.)

If JLL did not close a deal during the term, it could make a claim to compensation if: (1) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and (2) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (MOU, § 8.) Only then would ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*Id.* (emphasis added).) The provision eliminates any doubt that strict compliance was required, as it goes on to say: if ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ (*Id.* (emphasis added).)

Yet JLL has not pleaded that either condition was satisfied. The BEI Fee is expressly part of the compensation ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and thus subject to the tail. (MOU, § 8.) Yet, JLL does not allege that it provided the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▓▓▓▓▓▓▓▓▓▓ (*See* Compl.; *see also* MOU, § 17 ("Notices").)[3]  JLL's pleading also confirms that Archer did not enter into a qualifying transaction ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓  Again, JLL expressly pled to the contrary: that Archer closed its transaction nearly six months after the MOU expired.  (Compl., ¶ 17; Archer's Answer, ¶ 17.)

A party's failure to perform a condition precedent precludes an action for breach of contract.  *See, e.g.*, *Richman*, 224 Cal. App. 4th at 1192; *Long v. Int'l Paper Co.*, 902 F.2d 39 (9th Cir. 1990); Cal. Civ. Code § 1439 ("Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself.").  As discussed above, the tail provision reflects the parties' agreement about their respective rights in the exact type of payment dispute that is now before the Court.  Archer was entitled to know in *July 2022* whether JLL would make *any* claim for payment ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  The tail provision is a material term that the Court must apply.  *See Sixth & Bryant, LLC v. CORT Furniture Rental Corp.*, No. 20-cv-06444 (JST), 2022 WL 4245463, at *4 (N.D. Cal. Aug. 17, 2022), *appeal dismissed*, No. 22-16392, 2023 WL 2523512 (9th Cir. Jan. 26, 2023) (rejecting plaintiff's argument that the contract requirement to furnish defendant with a statement of costs by a specific deadline was "merely precatory").  Having received no notice, Archer was free to pursue and finalize a deal itself or using other vendors, and it had the right to do so without its former broker waiting silently for a deal announcement to send a $3.5 million bill.

### 3.  JLL's belated suggestion that the parties established a different "course of dealing" contradicts California law, the MOU, and the pleadings.

Finally, JLL asserted in its answer to the counterclaim that a "course of dealing" between the parties extended the MOU beyond its written term.  (JLL's Am. Answer, ¶ 51.)  The Court should reject this contention—raised for the first time after Archer pointed out the legal insufficiency of JLL's complaint—as it is both legally baseless and factually unsupported.

---

[3] Instead, in response to the counterclaim, JLL for the first time denied "[s]pecifically" that "written notice was required . . . ."  (*See* Counterclaim, ¶ 51; JLL's Am. Answer, ¶ 51.)  But the MOU expressly provides that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (MOU, § 17.)  JLL's denial is thus insufficient to raise any material dispute of fact.  *Daniels-Hall*, 629 F.3d at 998.

*First*, California's parol evidence rule exists "to make sure that the parties' final understanding, deliberately expressed in writing, shall not be changed." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 345 (2004). Under it, evidence of a course of dealing may "explain[] or supplement[]" ambiguous terms, but may not be used to "contradict[]" the written contract. *See* Cal. Civ. Proc. Code § 1856(a), (c); *see also Goldberg v. BAC Home Loans Servicing, LP*, No. 13-cv-0036 (JM-BLM), 2013 WL 2390718, at *4 (S.D. Cal. May 30, 2013). Application of the parol evidence rule is part of a court's interpretation of the contract and properly considered at the pleading stage. *See Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-cv-912 (IEG-BLM), 2008 WL 346421, at *3 (S.D. Cal. Feb. 6, 2008). Here, JLL cannot maintain that the parties had a "course of dealing" contrary to the express terms of the MOU. The MOU states that it ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (MOU, § 1; *see also id.*, § 8.) It further provides that any ▬▬▬▬ to a term extension, or ▬▬▬▬ of any provision, must be both ▬▬▬▬▬▬▬▬▬▬ (MOU, § 17.) Nothing is ambiguous about any of these terms. This is the parties' "final understanding, deliberately expressed in writing," and JLL's attempt to rewrite the agreement by asserting some unspecified "course of dealing" that extended the term fails as a matter of law. *Casa Herrera*, 32 Cal. 4th at 345.

*Second*, even if legally tenable (it is not), JLL pleads no *facts* in support of this theory anywhere—rather, it appears to be a last-ditch attempt by JLL to stave off an adverse judgment. (*See* Compl.; JLL's Am. Answer, ¶ 51.) The facts pled directly contradict a "course of dealing" theory, because the only course of dealing alleged is that JLL sent Archer an email in August 2022 confirming the termination of the parties' relationship. (Counterclaim, Ex. A; *id.*, ¶ 45; JLL's Am. Answer, ¶ 45.) JLL's apparent contention is thus that the parties had some *implicit* understanding that the MOU term would extend—even months after JLL *expressly confirmed the contrary* and ceased all work—such that JLL could collect a $3.5 million fee for a benefits package at the same time it *denies knowledge* (JLL's Am. Answer, ¶ 48) of what those benefits were. There are no facts alleged in any of the pleadings that would make such a theory plausible, nor could JLL assert any in an amendment. *See Goldberg*, 2013 WL 2390718, at *3; Cal. Civ. Proc. Code § 1856(a).

***

JLL failed to close a transaction within the MOU's term, did not and cannot make a claim under the tail provision, and did not perform the services set forth in ▇▇▇▇▇. Therefore, Archer did not breach the MOU's payment terms and JLL fails to state a claim for breach of contract.

**B.  JLL's remaining claims also fail.**

**1.  The pleadings fail to establish a cause of action for anticipatory repudiation.**

"Repudiation of a contract, also known as 'anticipatory breach,' occurs when a party announces an intention not to perform prior to the time due for performance." *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 231 Cal. App. 4th 1131, 1150 (2014). To state a claim, JLL must plead that Archer has made an affirmative statement that it will not substantially perform a "contractual duty." *See Gold Mining & Water Co. v. Swinerton*, 23 Cal. 2d 19, 29 (1943). Here, JLL alleges that Archer stated that it does not intend to pay JLL the BEI Fee or Phase 1 out-of-pocket expenses under the MOU. (Compl., ¶¶ 35–37.) Archer has denied these allegations (Archer's Answer, ¶¶ 35–37), but even taking them as true, there is no anticipatory breach when a party's announced intention would not breach that party's obligations. *Santa Fe Pointe, LP v. Greystone Servicing Corp.*, No. 07-cv-5454 (MMC), 2009 WL 1322874, at *2 (N.D. Cal. May 8, 2009). And here, Archer owes no BEI Fee for the reasons set forth above.[4]

**2.  JLL's unjust enrichment claim fails under California law.**

Unjust enrichment is not a cause of action in California. *Graham-Sult v. Clainos*, 756 F.3d 724, 750 (9th Cir. 2014); *see also Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so."). In some cases, courts in the Ninth Circuit have interpreted California law as recognizing unjust enrichment as a form of quasi-contractual claim seeking restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *see also Swafford v. Int'l Bus. Machs. Corp.*, 383 F. Supp. 3d 916,

---

[4] Archer denies that it ever refused to reimburse Phase 1 expenses as provided by the MOU. (Archer's Answer, ¶¶ 13, 20, 37.)

931–32 (N.D. Cal. 2019). But even if the Court rewrote the complaint to assert restitution rather than "unjust enrichment," such a claim would still fail as a matter of law.

*First*, no cause of action for restitution lies where, as here, a binding written agreement already defines the rights of the parties. *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *O'Connor v. Uber Techs., Inc.*, No. 13-cv-3826 (EMC), 2013 WL 6354534, at *13 (N.D. Cal. Dec. 5, 2013). *Second*, even assuming—contrary to the facts here—that the contract had no express payment terms, JLL would still have to show that Archer was "unjustly conferred a benefit through mistake, fraud, coercion, or request." *See Astiana*, 783 F.3d at 762 (quotation omitted). JLL pled no such circumstances. *See id.* Instead, JLL merely states, in conclusory fashion, that "JLL has conferred a benefit on Archer [...] for which Archer received economic benefit, and for which Archer has not compensated JLL" and that it would be "inequitable" for Archer to retain the "benefit." (*See* Compl., ¶¶ 42, 45.) The bare allegation that payment terms JLL itself authored are "inequitable" does not state a claim for restitution. *See Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986) (A court "cannot create new rights under the guise of doing equity.").

### C. The Court should grant Archer judgment on its claim for declaratory relief.

There is a split within the Ninth Circuit as to whether a district court sitting in diversity applies state law or the Federal Declaratory Judgment Act to claims seeking a declaration of rights. *See Dias v. Spartan Micro, Inc.*, No. 22-cv-00834 (JVS), 2022 WL 17216820, at *7 (C.D. Cal. Sept. 14, 2022). Here, that dispute is inconsequential. *See Bumpus v. U.S. Fin. Life Ins. Co.*, No. 20-cv-00926 (MCE), 2022 WL 4366979, at *3 n.2 (E.D. Cal. Sept. 21, 2022) ("the federal and state declaratory relief acts are 'broadly equivalent.'"). Under Cal. Civ. Proc. Code § 1060, contracts are a proper subject for declaratory relief when the claim presents "an actual controversy involving justiciable questions relating to [the plaintiff's] rights or obligations." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 909 (2013) (quoting *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1582 (2011)). Declaratory relief is appropriate here where the parties disputed their rights and obligations under the contract. Similarly, the Declaratory Judgment Act permits courts to "declare the rights and other legal relations of any interested party seeking such

declaration, whether or not further relief is or could be sought" in a "a case of actual controversy." 28 U.S.C. § 2201. For the reasons set forth above, the Court should grant Archer's claim for declaratory judgment that the MOU expired and is no longer in force, that Archer does not have an obligation to make any payments to JLL as it has claimed, and that, as a result, Archer is entitled to its attorney fees and related costs and expenses under Section 5 of the MOU.

## VI. CONCLUSION

For the reasons stated above, Archer is entitled to judgment on the pleadings on all claims.

Dated: September 1, 2023                FENWICK & WEST LLP

By: */s/ Laurence F. Pulgram*
    Laurence F. Pulgram

    Attorneys for Defendant
    ARCHER AVIATION, INC.